U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 06-03200

ORDER ON TRUSTEE'S OBJECTION TO CONFIRMATION

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**11/14/2006**



US Bankruptcy Court Judge
District of South Carolina

Entered: 11/16/2006

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | Case No. 06-03200-dd |
| Kevin Paul Cleary | ) | |
| | ) | ORDER ON TRUSTEE'S OBJECTION |
| Debtor. | ) | TO CONFIRMATION |
| | ) | |

THIS MATTER is before the Court for hearing on confirmation of the debtor's plan dated July 31, 2006. The chapter 13 trustee objects to confirmation on the basis that expenditures for private school tuition are not reasonable and necessary expenses and thus that the plan does not provide "that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C § 1325(b)(1)(B).[1]

### Findings of Fact[2]

1. Kevin Paul Cleary ("Debtor") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on July 31, 2006.

2. Debtor is married, although his spouse did not join in the petition. Mr. and Mrs. Cleary have six children, the youngest age 7.

3. Debtor is employed as a driver for a nationwide parcel delivery service, and has been so employed for 21 years. His current net monthly take home pay, after deduction for taxes, union dues, and a 401k contribution, is $ 4,522.00

---

[1] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 et. seq., will be by section number only.

[2] This order contains the findings of fact and conclusions of law made pursuant to Fed. R. Bankr. P. 7052 (adopting Fed. R. Civ. P. 52 in adversary proceedings), and made applicable to contested matters by Fed. R. Bankr. P. 9014(c). To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

4. Mrs. Cleary was not employed outside the home for approximately 15 years of the marriage. She has been employed as a teacher's aide at a parochial school for the past 2 years. Her net take home pay, after taxes and a small 401k contribution, is $ 918.50. An additional $ 813.00 is deducted from her pay check for tuition for three of the couple's children who attend the school. Mrs. Cleary's actual take home pay is $105.50.

5. The family's gross annual income is reported on Form B22C in the amount of $ 86,283.60.

6. The applicable median income for a South Carolina family of 8 is $ 86,918.00.

7. The family currently spends $ 1,165.00 for the mortgage payment, including taxes, insurance and home maintenance; $ 265.00 for utilities; $ 1,500.00 for food; $ 85.00 for automobile taxes and insurance; $465.00 for miscellaneous expenses (clothing, laundry, medical, recreation and personal); and $100.00 for transportation. The family spends $ 1,513.00 for private school (elementary and secondary) tuition each month.

8. Five of the six children attend private school. The sixth child attended private school until the current school year when he asked to attend public school for the experience. The testimony was that the sixth child would like to return to private school next year. Mr. and Mrs. Cleary receive assistance from the private high school in the form of reduced tuition because of their income and family size.

9. Mr. and Mrs. Cleary own an "$150,000" 3 bedroom ranch style home and modest furnishings. They also own three vehicles; a late model van, under lien, and two older cars. The home is subject to two mortgages and has little equity if Debtor's statements of the current market value and mortgage balances are correct.

10. In addition to the mortgages and automobile loan the Debtor has two purchase money furniture accounts, two loans secured by avoidable liens on household goods, and less than $ 18,000 in unsecured debt, mostly from credit cards.

11. The plan provides for monthly payments of $450 for 60 months. Trustee commission and expenses will be paid, an attorney fee of $1999 will be paid through the plan, the arrearage on the first mortgage will be cured through the plan (with ongoing payments made outside the plan), the indebtedness for the late model automobile will be paid in full under the plan, and unsecured creditors will receive a small dividend.

12. The plan and related motions also provide that the debt for the second mortgage on the home is current, that collateral for the two purchase money furniture loans will be surrendered, and that the non-purchase money liens on household goods will be avoided.

13. Mr. Cleary testified and was a credible witness. He testified that the family holds membership in the Catholic Church. Mrs. Cleary received a private Catholic school education as a child and teenager. She works outside the home only to fund the private school tuition for the children and otherwise would not do so. Mr. Cleary testified that the children are in private school so as to obtain a Catholic church based education and that this is very important to him and his wife.

14. Mr. Cleary credibly testified that his family has chosen to reduce expenditures in other categories in order to provide the funds for private school tuition. Given the family size, many of the expenses are well below reported averages and below that which the chapter 13 trustees in this district would deem objectionable in chapter 13 cases.

15. Mr. Cleary testified that the family lives in a school attendance zone with some of the better schools in a school district that does not enjoy a good reputation with many in the

community and whose overall student population does not score well on standardized tests. Mr. Cleary testified that it is his belief that the children will receive a better education in private school.

16. Debtor's testimony, along with the sworn schedules of expense, sufficiently document the private school tuition.

17. The private school tuition expense of Debtor's family is not accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in §707(b)(2)(A)(ii)(I).

## Conclusions of Law

The Court is presented with the narrow issue of whether private school tuition is "an amount reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. . . ." § 1325(b)(2)(A).[3] The question is relevant because only such expense amounts as are reasonably necessary may be deducted from current monthly income to determine disposable income that must be paid to unsecured creditors. This analysis is necessary only if the trustee or holder of an allowed unsecured claim objects to confirmation. § 1325(b)(1).

The determination of "disposable income" is a bifurcated process following the effective date of BAPCPA. "'Disposable income' for above median income debtors is defined as a debtor's 'current monthly income', also a defined term under § 101(10A), less amounts reasonably necessary 'to be expended' as determined by § 707(b)(2)(A) and (B)." *In re Edmunds*, __ B.R. __, 2006 WL 2709588 (Bankr. D. S.C., September 18, 2006). For below median income debtors, the majority of courts have used Schedules I and J to

---

[3] The amendments to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), *Pub. L. No. 109-8, 119 Stat.23*, are applicable to this case. Provisions of BAPCPA are codified throughout Title 11.

determine "projected disposable income." *See In re Dew*, 344 B.R. 655 (Bankr. N.D. Ala. 2006)( Schedules I and J, although there may be a second step); *In re Schanuth*, 342 B.R. 601 (Bankr. W.D. Mo. 2006)(current monthly income from Form B22C less Schedule J expenses); *In re Kibbe*, 342 B.R. 411 (Bankr. D. N.H. 2006)(Schedules I and J). Debtor is a below median income debtor. Here Debtor's Schedule I, line 3 gross income and Form B22C "current monthly income" is the same. Thus the Court need not navigate the path nor choose between § 1325(b)(2) disposable income and § 1325(b)(1)(B) projected disposable income as a starting point. *See In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006); *In re Beasley*, 342 B.R. 280 (Bankr. C.D. Ill. 2006); *In re Dew*, at 660.

The expense calculation is also bifurcated. *See Schanuth* at 604. "Amounts reasonably necessary to be expended under paragraph (2) . . .[are] determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has [annualized] current monthly income . . . greater than . . . [the applicable] median family income of the applicable State. . . ." § 1325(b)(3). In sum, for an above median income debtor, the expenses are those supplied using the "means test" calculation with reference to standard Internal Revenue Service expenses recognized for debt collection purposes and to other defined expenses. For a below median income debtor, as we have here, the amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor are determined in the context of the estimated average monthly expenses reported on Schedule J. These expenses must undergo judicial analysis, in the face of an objection, as to reasonable-ness and necessity; or as some might say, 'the old fashion way.' This Court considers Schedules I and J in the confirmation process for both above and below median income

debtors. *See In re Edmunds*, __ B.R. __, 2006 WL 2709588 (Bankr. D. S.C., September 18, 2006).

The debtor bears the burden of showing that an expense is reasonable for confirmation purposes. *In re Watson*, 403 F.3d 1 (1st Cir. 2005); *Lynch v. Tate (In re Lynch)*, 299 B.R. 776, 779 (W.D. N.C. 2003). Prior to enactment of BAPCPA the courts were split on the subject of the reasonableness of private school tuition as a deduction from income to arrive at disposable income. The majority of the cases reject private school tuition as a reasonable and necessary expense; at least in the absence of educational necessity or special needs.[4] Earlier decisions expressed the "view that a debtor's creditors should not pay tuition for the debtor's children." *In re McNulty*, 142 B.R. 106 (Bankr. D. N.J. 1992) ; *See also In re Jones*, 55 B.R. 462 (Bankr. D. Minn. 1985)(Expressing the view, no longer held in many circles, that the public education was of high quality.). The fulcrum was to balance "creditor's rights against the appropriate basic needs of the debtors and their dependents." *Watson* at 8.

The public policy notion that private school tuition is a luxury expense for the purposes of calculating available income under either the chapter 7 means test or for the disposable income analysis in confirming a chapter 13 plan is swept aside by BAPCPA. An allowable expense is that for "each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such

---

[4] The majority cases are represented by *In re Watson,* 403 F.3d 1 (1st Cir. 2005); *In re Savage*, 311 B.R. 835 (1st Cir. BAP 2004); *In re Lynch*, 299 B.R. 776 (W.D. N.C. 2003); *In re Univest-Coppell Village, LTD*, 204 B.R. 497 (E.D. Tex. 1996). The cases approving private school tuition rest on special circumstances. *See In re Burgos*, 248 B.R. 446 (Bankr. M.D. Fla. 2000)(paying as much to unsecured creditors as expense of tuition, always attended parochial school, strong religious beliefs, debtors retained no real estate); *In re Nicola*, 244 B.R. 795 (Bankr. N.D. Ill. 2000)(some evidence of inadequate local schools and long term attendance of debtor's children at private school); *In re Webb*, 262 B.R. 685 (Bankr. E.D. Tex. 2001)(special needs child).

expenses are reasonably necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I)." §707(b)(2)(A)(ii)(IV).  For some purposes at least, Congress has set forth the public policy that private school tuition can be a reasonable and necessary expense.

The Court then is faced with two issues.  Is some expense for private school tuition reasonably necessary and, if so, in what amount?  The pre-BAPCPA cases setting forth special circumstances are helpful in this analysis, although care must be shown to the public policy shift.

While the Debtor is retaining real estate, paying a 1% dividend to general unsecured creditors, and the children have no special education needs other than the fact that they are bright and need to be challenged; these factors are outweighed by others.  The Debtor and his family have shown long term enrollment at parochial schools.  All of the children attend private school, save one - who plans to return to private school next year.  The Debtor's wife attended private school.  The Debtor and his wife have strongly held religious convictions.  The Debtor's wife would not work outside the home (and did not do so for many years) except to provide additional income to pay for private school tuition.  In fact, Mrs. Cleary's pay check is reduced by the amount of tuition for the couple's children who attend the elementary school where she works.  The family's sacrifice of other basic expenses to fund private school tuition is noteworthy[5] and, in this case, the deciding factor for the Court in approving the necessity and reasonableness of the expense for private school tuition.  *See In re Grawey*, 2001 WL 34076376 (Bankr. C.D. Ill. 2001)(private school tuition and belt-tightening in the context of the dischargeability of student loans - sacrifices other basic

---

[5] This is not to say that a debtor may report spending less in a category without affecting the analysis of other confirmation standards.  There are thresholds for expense categories that debtors may not cross without an impact on feasibility.  Expenses must be truthfully and realistically reported.

necessities such as health care insurance).  Debtor, if his testimony and schedules are truthful, could file a chapter 7 petition and it is very likely that he would lose no assets to administration for creditors.  He is curing a small arrearage on his home loan through the chapter 13 plan, but the amount is *de minimis*.  Debtor is giving up furniture secured by purchase money loans.  For these reasons the Court finds that private school tuition is a reasonable and necessary expense of the debtor.

The final issue is whether Debtor is limited to a monthly expenditure of $ 125 per child in private school.  If so he would be limited to $625 at present and $750 in the coming school year.  The calculation of the means test in chapter 7 and of disposable income for above the median income debtors in chapter 13 limits the expenditure for private school tuition.  This limit is presumptively reasonable.  In the circumstances of this case the Court finds that the Debtor is not limited to this expense ceiling.  This aspect of the decision is limited very narrowly to the facts of this case.  Mrs. Cleary is not a co-debtor.  Her income would likely not be available if the children withdrew from private school because she would not work outside the home.  It is only because of her religious convictions that she works outside the home and sends her children to private school.  Debtor and his family sacrifice significantly in the purchase of food and clothing and in the areas of recreation and transportation expense.  The expense of $1,513.00 for private school tuition is a reasonable and necessary expense.

The objection of the trustee is overruled.  The plan will be confirmed by separate order.